# EXHIBIT A

## CONSENT DECREE

WHEREAS, San Francisco Baykeeper, Inc. ("Baykeeper") is a non-profit public benefit corporation dedicated to the preservation, protection, and defense of the environment, wildlife, and natural resources of the San Francisco Bay and other area waters;

WHEREAS, S.O.S. Steel Company, Inc. ("SOS Steel") operates a steel fabrication facility located at 1160 Richard Avenue in Santa Clara, California (the "Facility").  Baykeeper and SOS Steel are collectively referred to herein as the "Parties";

WHEREAS, stormwater discharges associated with industrial activity at the Facility are regulated pursuant to the National Pollutant Discharge Elimination System ("NPDES") General Permit No. CAS000001 [State Water Resources Control Board], Water Quality Order No. 92-12-DWQ (as amended by Water Quality Order 97-03-DWQ), issued pursuant to Section 402 of the Federal Water Pollution Control Act, 33 U.S.C. §1342 (hereinafter "Industrial Stormwater Permit").  These industrial activities include, *inter alia*, the processing, fabrication, painting, and finishing of steel and metal pieces, the transportation of materials on and off site, storage of metal and steel pieces, equipment, and waste materials on site, truck and equipment operation, and other industrial activities related to the operation of a steel fabrication facility;

WHEREAS, the Industrial Stormwater Permit includes the following requirements for all permittees, including SOS Steel:  1) develop and implement a stormwater pollution prevention plan ("SWPPP"), 2) control pollutant discharges using best available technology economically achievable ("BAT") and best conventional pollutant control technology ("BCT") to prevent or reduce pollutants, 3) implement BAT and BCT through the development and application of Best Management Practices ("BMPs"), which must be included and updated in the SWPPP, and, 4)

when necessary, implement additional BMPs to prevent or reduce any pollutants that are causing

or contributing to any exceedance of water quality standards;

WHEREAS, on January 7, 2013, Baykeeper served SOS Steel, the Administrator of EPA

Region IX, the Executive Director of the State Water Resources Control Board ("State Board"),

the Executive Officer of the Regional Board, the U.S. Attorney General, and the Administrator

of the EPA with a notice of intent to file suit ("60-Day Notice") under Sections 505(a)(1) and (f)

of the Federal Water Pollution Control Act ("Clean Water Act" or "the Act"), 33 U.S.C. §

1365(b)(1)(A), alleging violations of the Act and the Industrial Stormwater Permit at the Facility;

and

WHEREAS, Baykeeper initiated a lawsuit against S.O.S. Steel in the United States

District Court, Northern District of California, Case No. C 13-01113 PSG ("Complaint"); and

WHEREAS, SOS Steel generally denies the allegations in the 60-Day Notice and

Complaint and denies any admission of liability; but

WHEREAS, the Parties believe it is in their mutual interest and choose to resolve in full

Baykeeper's allegations in the 60-Day Notice and Complaint through settlement and avoid the

cost and uncertainties of further litigation;

NOW THEREFORE IT IS HEREBY STIPULATED BETWEEN THE SETTLING

PARTIES, AND ORDERED AND DECREED BY THE COURT, AS FOLLOWS:

## I.  COMMITMENTS OF SOS STEEL

1.    In order to further reduce or further prevent pollutants associated with industrial

activity from discharging via stormwater to the waters of the United States, SOS Steel shall

implement appropriate structural and non-structural Best Management Practices ("BMPs"), as

required by the Industrial Stormwater Permit, as described more fully below.

2.      **Site Map**:  Within thirty (30) days of the Effective Date, SOS Steel shall update the Site Map included in the Facility SWPPP.  The Site Map shall clearly denote the topography and the direction of stormwater flow for each distinct area of the Facility.  The Site Map shall also identify  property boundaries, known or suspected drop inlets, ground type (pervious or impervious), berms and the materials they are composed of, any permanent structures and features, discharge points, and all other physical structures or items relevant under the Industrial Stormwater Permit and in this Consent Decree.

3.      **Designation and Protocol for All Sampling Locations**:  Within thirty (30) days of the Effective Date, SOS Steel shall update the Facility SWPPP to fully describe any modifications to the discharge or sampling locations, as shown on the Site Map and described in the SWPPP ("Designated Discharge Point").  While the Consent Decree is in effect, if SOS Steel makes any material changes to the Designated Discharge Points at the Facility, SOS Steel shall update the SWPPP within thirty (30) days and submit the revised SWPPP to Baykeeper, consistent with the requirements of Paragraph 14, below.

4.      **Best Management Practices**:  SOS Steel shall develop and implement BMPs necessary to, at a minimum, comply with Effluent Limitation B(3) and Receiving Water Limitation C(2) of the Industrial Stormwater Permit, including the BMPs set forth in paragraphs 5 through 13 of this Consent Decree.

5.      **Storm Drain Inlet/Catch Basin Best Management Practices**:

a.      Storm Drain Inlet/Designated Discharge Point Inspections:  Between September 1 and October 1 of each year, SOS Steel shall inspect any storm drain inlets, catch basins, Designated Discharge Points, filtration/treatment devices, and other BMPs in place at the Facility.  SOS Steel shall promptly clean, as needed, each

drain inlet, catch basin, Designated Discharge Point, filtration/treatment device, and other BMPs in order to remove any accumulated dust, sediment, solids, or debris.

b.     Storm Drain Inlet/Designated Discharge Point Maintenance and Cleaning: Weekly during the Wet Season (*i.e.*, from October 1 to May 30 of each year that this Consent Decree is in effect) ("Wet Season"), SOS Steel shall inspect all storm drain inlets, catch basins, Designated Discharge Points, filtration/treatment devices, and other BMPs in place at the Facility to ensure that they are not in a condition that would materially impair their efficacy, and clean out accessible deposited sediment or debris.  SOS Steel shall properly dispose of any dust, sediment, debris, or other removed pollutants.

c.     Preparation for Rain Events:  During the Wet Season, SOS Steel shall monitor weather reports.  Within 48 hours before any likely precipitation event forecast of 30% or greater probability, SOS Steel shall thoroughly clean and inspect the outdoor parts of the Facility, including the BMPs in place, in preparation for a rain event.

d.     Log of Storm Drain Inlet/Designated Discharge Point Inspections, Maintenance and Cleaning:  SOS Steel shall prepare and maintain a log of the Storm Drain Inlet/Designated Discharge Point Inspections, Maintenance and Cleaning described herein ("Maintenance Log").  The Maintenance Log shall indicate the staff who completed the maintenance/cleaning activity and when it was completed.  The Log shall be made available for inspection by Baykeeper at any site inspection or otherwise within three (3) business days advance request by Baykeeper.

6.      **Site Sweeping**:  After the Effective Date, SOS Steel shall sweep the outdoor paved areas of the Facility at least once per week, and the indoor work areas at least once per day.  Sweeping shall be accomplished using a hand-held broom, vacuum, or a mechanical sweeper.   SOS Steel shall keep a log or checklist of the on-site sweeping activity performed ("Sweeping Log"), and shall direct employees and/or contractors to accurately complete the Sweeping Log.  The Sweeping Log shall indicate the employee or contractor who conducted the sweeping, the location of the sweeping, and the dates the sweeping activities occurred.  The Sweeping Log shall be made available for inspection by Baykeeper at any site inspection or otherwise within three (3) business day advance request by Baykeeper.

7.      **Consolidating Operations and Storage Areas:**  Within thirty (30) days of the Effective Date, SOS Steel shall evaluate whether operations and storage areas can be consolidated at the Facility to reduce the amount of outdoor space used for short- and long-term storage of metal and steel.

8.      **Abandoned or Inutile Equipment Storage and Removal**:  Within thirty (30) days of the Effective Date and bi-annually, at a minimum, thereafter, SOS Steel shall:  1) identify unused and unwanted metal and steel being stored outdoors and either store it under cover or remove it from the Facility, and 2) store under cover or remove all abandoned or broken equipment or materials no longer considered for future use that have the potential to serve as a source of pollutants.

9.      **Vehicle and Equipment Management**:  Beginning on the Effective Date, SOS Steel shall continue to implement BMPs to reduce or minimize pollutant release from equipment such as forklifts, hydraulic lifts, trucks, and other heavy equipment that are parked or stored in areas of the Facility from which stormwater discharges.  Such BMPs shall include placing drip

pans under equipment stored or parked for a week or longer, weekly inspections for evidence of leaks from such equipment, and prompt (as soon as reasonably possible and in no case later than in advance of forecasted rainfall events) clean up of spills, drips, or leaks from such equipment. Any spilled substances and absorbent materials used in cleaning up spills shall be disposed of in accordance with all local, state, and federal laws and regulations.

10.     **Vehicle and Equipment Maintenance**:  Beginning on the Effective Date, SOS Steel shall not conduct vehicle or movable equipment maintenance or repair at the Facility in outdoor, uncovered areas from which stormwater discharges during rainfall events, without the use of drip pans or other protective measures to prevent potential pollutant release from contaminating the outdoor area under and around the equipment.  SOS Steel shall inspect the area where the maintenance or repair occurred and clean up waste products, including pollutant-containing fluids deposited or spilled on the ground as a result of the maintenance or repair.

11.     **Storm Drain Inserts:**  By the Effective Date, SOS Steel shall install new filters into its existing Safe Drains at its five storm drains at the Facility.  During the Wet Season, SOS Steel will maintain the straw dams and bags at each Safe Drain in proper condition.  During the remainder of the year, SOS Steel shall store the straw dams and bags indoors to prevent damage. Prior to any rain event, SOS Steel shall remove the steel plate Safe Drain covers and position the straw dams and bags as appropriate.

12.     **Training**:  Beginning on the Effective Date, and annually thereafter, and within thirty (30) days of hiring of new employees, SOS Steel shall conduct training for all appropriate employees to explain the requirements of the Facility's SWPPP to the extent applicable to such employee.  Training shall focus on 1) the employee's role in implementing various stormwater control measures including, for example, implementation of BMPs, sweeping, vehicle

maintenance, or facility inspections, and 2) strategies for reducing the release of pollutants that could reach stormwater during rain events.  Training shall be conducted bilingually (*i.e.,* Spanish/English or other pertinent language) to the extent that such employee is not reasonably able to comprehend training in English.  If and when appropriate, SOS Steel shall integrate any new training requirements resulting from this Consent Decree into the Facility SWPPP.  SOS Steel shall also update the SWPPP, if and when appropriate, to identify the positions responsible for carrying out stormwater management, monitoring, sampling, and SWPPP implementation.

13. **Maintenance of BMP Structural Controls**:  Beginning on the Effective Date, SOS Steel shall maintain structural BMPs at the Facility in good operating condition and shall promptly repair any damaged or degraded structural BMPs.

14. **Amendment of SWPPP**:  Within thirty (30) days of the Effective Date, SOS Steel shall amend the Facility SWPPP to incorporate the requirements and BMPs set forth in Paragraphs 5 through 13 of this Consent Decree and thereafter submit the updated SWPPP to Baykeeper within ten (10) business days.  Baykeeper shall have thirty (30) days from receipt of the amended SWPPP to propose any changes to the SWPPP.  Within thirty (30) days of notification by Baykeeper of any proposed changes to the SWPPP, SOS Steel shall make all of Baykeeper's changes to the amended SWPPP unless SOS Steel timely invokes Dispute Resolution.  Compliance with the SWPPP, as amended in accordance with this paragraph provision, shall at all times be a requirement of this Consent Decree.

### III.   SAMPLING, MONITORING, INSPECTION & REPORTING

15. **Designated Discharge Points:** For purposes of this Consent Decree, the following discharge points, identified in Exhibit 1, shall be Designated Discharge Points: 1, 2, 3, 4, and 5.

16.     **Sampling Program - Stormwater**:  Beginning with the 2013-2014 Wet Season, subject to the limitations set forth below, SOS Steel shall collect and analyze stormwater samples from all of its Designated Discharge Points at the Facility according to the following sampling schedule:

a.      During each Wet Season starting with the 2013-2014 Wet Season, SOS Steel shall collect and analyze samples from all five (5) Designated Discharge Points during the first four (4) storm events of the Wet Season, as qualified in the Industrial Stormwater Permit, except that SOS Steel can collect and analyze stormwater discharges after the first hour of discharge during scheduled operating hours and samples can be collected during any storm event that is preceded by a 24-hour dry period.  If SOS Steel is unable to take a sample from any of the Designated Discharge Points during any of the first four storm events of the Wet Season, SOS Steel shall continue to sample from any subsequent storm events until four samples have been collected from each Designated Discharge Point in that Wet Season.  In the event that SOS Steel is unable to collect four samples from each Designated Discharge Point in a Wet Season, SOS Steel shall explain in writing why it was unable to collect the required sample(s).  If three (3) consecutive samples from a Designated Discharge Point have constituent concentrations below the Target levels set forth in Exhibit 2 for all parameters, SOS Steel need not conduct additional sampling in that Wet Season from that Designated Discharge Point.

b.      Should industrial processes materially change at the Facility, SOS Steel shall conduct sampling for any additional toxic priority pollutants listed in 40 C.F.R.

§ 131.38 likely to be present in the Facility's stormwater discharges in significant quantities as a result of the changed industrial processes.

c.      Where SOS Steel discharges stormwater into a storm drain inlet, catch basin, or filtration device, SOS Steel should endeavor to collect a sample below any insert or treatment device.

17.      **Certified Lab**:  SOS Steel shall have all stormwater samples collected pursuant to this Consent Decree delivered to a California state certified environmental laboratory for analysis within the time needed for analysis within laboratory method allowable hold times.  The laboratory shall thereafter conduct analysis sufficient to detect individual constituents at or below the levels set forth in the attached Exhibit 2.

18.      **Sample Result Reporting**:  After the Effective Date, SOS Steel shall provide complete results from sampling and analysis to Baykeeper within ten (10) calendar days of receipt of the laboratory report from each sampling event.

19.      **BMP Analysis Report**:  After SOS Steel has obtained sampling results from the first two (2) rain events during the 2013-2014 Wet Season, SOS Steel shall prepare a BMP Analysis Report.  This report shall include:  1) a summary chart with the sample results from the first two (2) rain events of the 2013-2014 Wet Season, and 2) a comparison of the sample results to the Target Levels identified in Exhibit 2.  If any Target Levels are exceeded, the BMP Analysis Report must then identify:  1) the likely source(s) of the pollutants, 2) new BMPs that SOS Steel will implement, and 3) a schedule for implementation of the new BMPs identified. SOS Steel shall consider the following BMPs:  1) removing the existing asphalt to a depth of 6 inches and installing a larger 10 foot radius of concrete around each of the five (5) Safe Drains, 2) closure of the storm drain at Designated Discharge Point 3, 3) increasing the number of straw

dams and bags around the Safe Drains, 4) increasing the frequency of sweeping, 5) additional paving of outdoor areas, 6) additional coverage of outdoor materials, and 7) installing a dry swale or advanced treatment system.

20. **Baykeeper Review of BMP Analysis Report:** Baykeeper shall have thirty (30) days from receipt to propose revisions to the BMP Analysis Report. Within thirty (30) days of receiving Baykeeper's revisions, SOS Steel shall adopt Baykeeper's requested revisions to the BMP Analysis Report, and provide written documentation to Baykeeper, unless SOS Steel timely invokes Dispute Resolution.

21. **End of Season Summary**: By June 15 following each Wet Season that occurs during the Consent Decree, SOS Steel shall prepare and send to Baykeeper an End of Season Summary that includes: 1) a summary chart with all of the sample results from the previous Wet Season including the constituent concentration(s) from Designated Discharge Point sample(s) collected at the Facility exceeding the Target Levels in Exhibit 2 ("Exceedance(s)"), and 2) identification of (if any) new BMPs that SOS has implemented or will implement not already discussed in a prior BMP Analysis Report, End of Season Summary, or Action Plan for the immediately prior Wet Season.

22. **Action Plan**: If any stormwater sample result during a Wet Season, except for the first two storm events sampled during the 2013-2014 Wet Season as part of the BMP Analysis Report, exceeds any Target Level set forth in Exhibit 2, SOS Steel shall submit an Action Plan in addition to an End of Season Summary by June 15 following that Wet Season.

23. **Contents of Action Plan**: If an Action Plan is required, it shall set forth: 1) the possible sources of SOS Steel's Exceedance(s) during the applicable Wet Season, 2) revised and/or additional BMPs that are designed to reduce the level of constituent concentrations

associated with the Exceedances in future storm water discharges to the Target Levels in Exhibit 2, and that are designed to achieve applicable water quality standards for those constituents, and 3) a schedule to implement any revised and/or additional BMPs by the earliest practicable time, and no later than October 1 of the next Wet Season.  In any Action Plan required under this Consent Decree, SOS Steel shall consider the following BMPs:  1) additional coverage of work and/or storage areas, 2) closure of the storm drain at Designated Discharge Point 3, 3) paving portions of its pervious and semi-pervious surfaces, and 4) installing a dry swale.  If SOS Steel determines not to implement these BMPs, it shall set forth in the Action Plan the reasons for any such determination.

24.     **Baykeeper Review of Action Plan**:  Baykeeper shall have thirty (30) days from receipt to propose revisions to the Action Plan.  Within thirty (30) days of receiving Baykeeper's revisions, SOS Steel shall adopt Baykeeper's requested revisions to the Action Plan unless SOS Steel timely invokes Dispute Resolution.

25.     SOS Steel shall implement the Action Plan(s) adopted pursuant to this Consent Decree as an obligation of this Consent Decree.

26.     Within thirty (30) days after BMPs set forth in an Action Plan pursuant to this Consent Decree are implemented, SOS Steel shall amend the Facility SWPPP to include all BMP revisions or additions not otherwise already implemented and included in the SWPPP.  Within thirty (30) days thereafter, SOS Steel shall provide Baykeeper with a copy of such revised SWPPP.

27.     During each Wet Season, SOS Steel is under an ongoing obligation to evaluate the BMPs implemented at the Facility and discussed in current or previous Action Plans and, if Target Levels have been exceeded, continue to attempt to reduce the concentrations to Target

11

Levels for the remainder of the Wet Season.  SOS Steel shall use the results from subsequent stormwater samples as they become available to assist with their ongoing evaluation of the effectiveness of BMPs.

28.     **Site Access**:  During the Term of this Consent Decree, SOS Steel shall permit representatives of Baykeeper to perform one (1) physical inspection per year of the Facility during operating hours ("Site Inspection").  Baykeeper shall provide SOS Steel forty-eight (48) hours notice in advance of such Site Inspection, and SOS Steel shall have the right to deny access if circumstances would make the Site Inspection unduly burdensome and pose significant interference with business operations.  In such case, SOS Steel shall specify at least three (3) days within the next two (2) weeks upon which a Site Inspection may proceed during normal business hours, and the Parties shall agree upon the inspection date.  Baykeeper shall comply with all safety instructions provided to Baykeeper by SOS Steel staff during all Site Inspections.  During Site Inspections, Baykeeper shall be allowed to inspect and sample any stormwater discharges.

29.     **Reports**:  During the Term of this Consent Decree, SOS Steel shall provide Baykeeper with a copy of all documents submitted to the Regional Water Board or the State Water Board concerning the Facility's compliance with the Industrial Stormwater Permit.  Such documents and reports shall be transmitted to Baykeeper via electronic mail, if feasible, or by U.S. Mail when electronic transmission is not feasible, at the time the documents are due to be submitted to the Regional Water Board or State Water Board.

### IV.     MITIGATION, FEES, AND COSTS

30.     **Environmental Mitigation Funding**:  As mitigation for the alleged violations set forth in Baykeeper's Notice and Complaint, within thirty (30) days of the Effective Date, SOS

12

Steel shall pay the sum of ten thousand dollars ($10,000) to the Rose Foundation for the Environment, an environmental non-profit organization, for projects that will benefit the San Francisco Bay watershed.  The Rose Foundation shall report the grant funding made with the tendered funds to the Court, U.S. Department of Justice, and the Parties, setting forth the recipient and purpose of the funds.  Payment shall be made to the Rose Foundation for the Environment, 1970 Broadway, Suite 600, Oakland, California 94612 within thirty (30) days of the Effective Date, with notice to Baykeeper.

31.     **Reimbursement of Fees and Costs**:  SOS Steel shall reimburse Baykeeper in the amount of eighteen thousand dollars ($18,000) to help defray Baykeeper's reasonable investigation, expert, and attorneys' fees and costs, and all other reasonable costs incurred as a result of investigating the activities at the Facility related to this Consent Decree, bringing these matters to SOS Steel's attention, and negotiating a resolution of this action in the public interest. The first payment of nine thousand dollars ($9,000) shall be made payable to Baykeeper within thirty (30) days of the Effective Date.  The second payment of nine thousand dollars ($9,000) shall be made payable to Baykeeper by June 1, 2014.

32.     **Compliance Monitoring Funds:**  SOS Steel shall provide to Baykeeper one thousand, five hundred dollars ($1,500) per year for each of the two (2) years of the Term of this Consent Decree, in the total amount of three thousand dollars ($3,000) for costs and fees associated with monitoring SOS Steel's compliance with this Consent Decree.  The first compliance monitoring fund payment of $1,500 shall be made payable to Baykeeper within thirty (30) days after the Effective Date, and the remainder of the compliance monitoring fund payment, $1,500, shall be made payable to Baykeeper within 12 months from the Effective Date. In the event that an Action Plan is due under paragraph 22 of this Consent Decree, SOS Steel

13

shall provide to Baykeeper an additional two thousand dollars ($2,000) when the Action Plan is due.

33.   **Dispute Resolution**: If a dispute under this Consent Decree arises, or the Parties believe that a breach of this Consent Decree has occurred, the Parties shall schedule a meet and confer within ten (10) business days of receiving written notification from the other Party of a request for a meeting to determine whether a violation of this Consent Decree has occurred and to develop a mutually agreed upon plan, including implementation dates, to resolve the dispute. If the Parties fail to meet and confer or the meet and confer does not resolve the issue, after at least seven (7) business days have passed after the meet and confer occurred or should have occurred, either Party shall be entitled to all rights and remedies under the law, including bringing a motion before the United States District Court for the Northern District of California for the limited purpose of enforcing the terms of this Consent Decree.  The parties shall be entitled to seek fees and costs incurred in any such action pursuant to the provisions set forth in the Section 505(d) of the Clean Water Act, 33 U.S.C. §1365(d), and applicable case law interpreting such provisions.

## V.   JURISDICTION OVER PARTIES AND SUBJECT MATTER OF THE CONSENT DECREE

34.   **Jurisdiction.**  For the purposes of this Consent Decree, the Parties stipulate that the United States District Court of California, Northern District of California, has jurisdiction over the Parties and subject matter of this Consent Decree.  The Parties stipulate that venue is appropriate in the Northern District of California and that SOS Steel will not raise in the future as part of enforcement of this Consent Decree whether Baykeeper has standing to bring the

Complaint, any action to enforce this consent decree or any motion pursuant to the Dispute

Resolution procedures herein.

35.     **Jurisdiction to Enforce Consent Decree.**  This Court shall retain jurisdiction

over this matter for the purpose of adjudicating all disputes among the Parties that may arise

under the provisions of this Consent Decree.  The Court shall have the power to enforce this

Consent Decree with all available legal and equitable remedies.

36.     **Submission of Consent Decree to DOJ.**  Within three (3) business days of

receiving all of the Parties' signatures to this Consent Decree, Baykeeper shall submit this

Consent Decree to the U.S. Department of Justice ("DOJ") and EPA for agency review

consistent with 40 C.F.R. §135.5.  The agency review period expires forty-five (45) calendar

days after receipt by the DOJ, evidenced by correspondence from DOJ establishing the review

period.  In the event DOJ comments negatively on the provisions of this Consent Decree, the

Parties agree to meet and confer to attempt to resolve the issues raised by DOJ.

### VI.     WAIVER, RELEASES AND COVENANTS NOT TO SUE

37.     **Baykeeper Waiver and Release of Noticed Parties and Covenant Not to Sue**:

Upon the Effective Date, Baykeeper, on its own behalf and on behalf of its officers, directors,

employees, parents, subsidiaries, affiliates and each of their successors and assigns covenants not

to sue SOS Steel or its officers, directors, employees, members, parents, subsidiaries, affiliates,

or their successors or assigns, or its agents, attorneys, or other representatives with respect to any

stormwater discharges from the Facility that arose before or may arise during the Term of this

Consent Decree.  Baykeeper, on its own behalf and on behalf of its officers, directors,

employees, parents, subsidiaries, affiliates and each of their successors and assigns releases SOS

Steel or its officers, directors, employees, members, parents, subsidiaries, affiliates, or their

successors or assigns from and waives all claims raised in the 60-Day Notice and/or the Complaint, including all claims for fees (including fees of attorneys, experts, and others), costs, expenses, or any other sum incurred or claimed or which could have been claimed, whether known or unknown, for matters included in the 60-Day Notice and/or the Complaint.

38.    **SOS Steel's Waiver and Release of Baykeeper**:  SOS Steel, on its own behalf and on behalf of its officers, directors, employees, members, parents, subsidiaries, affiliates, or their successors or assigns release Baykeeper and its officers, directors, employees, members, parents, subsidiaries, and affiliates, and each of their successors and assigns from, and waive all claims which arise from or pertain to, the 60-Day Notice and/or the Complaint, including all claims for fees (including fees of attorneys, experts, and others), costs, expenses or any other sum incurred or claimed or which could have been claimed, whether known or unknown, for matters included in the 60-Day Notice and/or the Complaint.

## VII.    MISCELLANEOUS PROVISIONS

39.    **Effective Date**:  The Effective Date of this Consent Decree shall be the last day for the U.S. Department of Justice to provide comment on this Consent Decree, i.e., the 45th day following the U.S. Department of Justice's receipt of the Consent Decree.

40.    **Term of Consent Decree**:  This Consent Decree shall continue in effect until September 30, 2015 (the "Term"), at which time the Consent Decree, and all obligations under it, shall automatically terminate.  The waivers, releases, and covenants contained in paragraphs 37-38, inclusive, of this Consent Decree shall survive the termination of this Consent Decree.

41.    **Execution in Counterparts**:  The Consent Decree may be executed in one or more counterparts which, taken together, shall be deemed to constitute one and the same document.

42.     **Signatures**:  The Parties' signatures to this Consent Decree transmitted by facsimile or electronic mail transmission shall be deemed binding.

43.     **Construction**:  The language in all parts of this Consent Decree, unless otherwise stated, shall be construed according to its plain and ordinary meaning.  The captions and paragraph headings used in this Consent Decree are for reference only and shall not affect the construction of this Consent Decree.

44.     **Authority to Sign**:  The undersigned are authorized to execute this Consent Decree on behalf of their respective parties and have read, understood and agreed to all of the terms and conditions of this Consent Decree.

45.     **Integrated Consent Decree**:  All agreements, covenants, representations and warranties, express or implied, oral or written, of the Parties concerning the subject matter of this Consent Decree are contained herein.

46.     **Severability**:  In the event that any of the provisions of this Consent Decree are held by a court to be unenforceable, the validity of the enforceable provisions shall not be adversely affected.

47.     **Choice of Law**:  This Consent Decree shall be governed by the laws of the United States, and where applicable, the laws of the State of California.

48.     **Full Settlement**:  This Consent Decree constitutes a full and final settlement of this matter.

49.     **Negotiated Agreement**:  The Parties have negotiated this Consent Decree, and agree that it shall not be construed against the party preparing it, but shall be construed as if the Parties jointly prepared this Consent Decree, and any uncertainty and ambiguity shall not be interpreted against any one party.

50.     **Modification of the Agreement**: This Consent Decree, and any provisions herein, may not be changed, waived, or discharged unless by a written instrument signed by the Parties.

51.     **Assignment**:  Subject only to the express restrictions contained in this Consent Decree, all of the rights, duties and obligations contained in this Consent Decree shall inure to the benefit of and be binding upon the Parties, and their successors and assigns.

52.     **Mailing of Documents to Baykeeper/Notices/Correspondence**:  Any notices or documents required or provided for by this Consent Decree or related thereto that are to be provided to Baykeeper pursuant to this Consent Decree shall be, to the extent feasible, sent via electronic mail transmission to the e-mail addresses listed below or, if electronic mail transmission is not feasible, via certified U.S. Mail with return receipt, or by hand delivery to the following address:

Baykeeper:

Andrea Kopecky
San Francisco Baykeeper
785 Market Street, Suite 850
San Francisco, CA 94103
E-mail: andrea@baykeeper.org

Unless requested otherwise by SOS Steel, any notices or documents required or provided for by this Consent Decree or related thereto that are to be provided to SOS Steel pursuant to this Consent Decree shall, to the extent feasible, be provided by electronic mail transmission to the e-mail addresses listed below, or, if electronic mail transmission is not feasible, by certified U.S. Mail with return receipt, or by hand delivery to the addresses below:

SOS Steel:

Steve Boucher, President
SOS Steel Company, Inc.

18

1160 Richard Ave.
Santa Clara, CA 95050
E-mail: steveb@sossteelco.com

With a copy to:

Chris Hersey
Slater Hersey & Lieberman LLP
160 W. Santa Clara St., Suite 1575
San Jose, CA 95113
E-mail: chersey@slaterhersey.com

Notifications of communications shall be deemed submitted on the date that they are

emailed, or postmarked and sent by first-class mail or deposited with an overnight mail/delivery

service.  Any changes of address or addressees shall be communicated in the manner described

above for giving notices.

53.    **Impossibility of Performance**:  No Party shall be considered to be in default in

the performance of any of its obligations under this Consent Decree when performance becomes

impossible, despite the timely good faith efforts of the Party, due to circumstances beyond the

Party's control, including without limitation any act of God, act of war or terrorism, fire,

earthquake, flood, and restraint by court order or public authority.  "Circumstances beyond the

Party's control" shall not include normal inclement weather, economic hardship or inability to

pay.  Any Party seeking to rely upon this paragraph shall have the burden of establishing that it

could not reasonably have been expected to avoid, and which by exercise of due diligence has

been unable to overcome, the impossibility of performance.

54.    If for any reason the DOJ or the District Court should decline to approve this

Consent Decree in the form presented, the Parties shall use their best efforts to work together to

modify the Consent Decree within thirty (30) days so that it is acceptable to the DOJ or the

District Court.  If the Parties are unable to modify this Consent Decree in a mutually acceptable

CONFIDENTIAL SETTLEMENT COMMUNICATION          FRE 408 PROTECTED

manner that is also acceptable to the District Court, this Consent Decree shall immediately be

null and void as well as inadmissible as a settlement communication under Federal Rule of

Evidence 408 and California Evidence Code section 1152.

     55.     The settling Parties hereto enter into this Consent Decree, Order and Final

Judgment and submit it to the Court for its approval and entry as a final judgment.

SAN FRANCISCO BAYKEEPER

    Date: Sept. 12, 2013

    _____
Jayni Foley Hein
Managing Attorney, San Francisco Baykeeper

S.O.S. STEEL COMPANY, INC.

    Date: SEPT. 12, 2013

    _____
Steve Boucher
President, SOS Steel Company, Inc.

APPROVED AND SO ORDERED, this ___ day of _____.


       UNITED STATES DISTRICT JUDGE


       _____

# EXHIBIT 1

## Designated Discharge Points at SOS Steel



# EXHIBIT 2

**Target Levels for Stormwater Sampling**

| Constituent | Target Levels | Source |
|---|---|---|
| **pH** | 5 – 9 SU | *Multi-Sector General Permit 2000 benchmark* |
| **Total Suspended Solids** | 100 mg/L | *Multi-Sector General Permit 2008 Sector-specific benchmark* |
| **Nitrate + Nitrite Nitrogen** | 0.68 mg/L | *Multi-Sector General Permit 2008 Sector-specific benchmark* |
| **Total Aluminum** | 0.75 mg/L | *Multi-Sector General Permit 2008 Sector-specific benchmark* |
| **Total Iron** | 1.0 mg/L | *Multi-Sector General Permit 2008 Sector-specific benchmark* |
| **Total Zinc\*** | 0.13 mg/L | *Multi-Sector General Permit 2008 Sector-specific benchmark* |

\*This parameter is included in the 2008 Multi-Sector General Permit, but is hardness dependent. Hardness calculations are appropriate for discharges to freshwater (*see* http://water.epa.gov/scitech/swguidance/standards/current/index.cfm#appendxb; http://www.waterboards.ca.gov/sanfranciscobay/water_issues/programs/planningtmdls/basinplan/web/bp_ch3.shtml); hardness values are based on an assumed hardness of 100-125 mg/L.